UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____
DOMINICK BRENNAN, et al.,

                Plaintiffs,

      -against-

THE CITY OF NEW YORK, et al.,
_____
                Defendants.

ALALEKAN ABOUBAKAR, et al.,

                Plaintiffs,

      -against-

THE CITY OF NEW YORK, et al.,
_____
                Defendants.

**MEMORANDUM & ORDER**
**19-CV-02054 (NGG) (CLP)**


**20-CV-01716 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are motions for class certification in *Brennan v. City of New York* and *Aboubakar v. City of New York*. (Plaintiff's Memorandum of Law in Support of Motion for Class Certification ("Mot.") (*Brennan* Dkt. 138); Plaintiff's Memorandum of Law in Support of Motion for Class Certification (*Aboubakar* Dkt. 100).) Plaintiffs allege in each case that the conditions of confinement at Brooklyn Central Booking ("BCB"), a New York City Police Department ("NYPD") holding facility located at 120 Schermerhorn Street, Brooklyn, New York, have deprived them of their rights to due process under the Fourteenth Amendment. (Third Amended Complaint ("*Brennan* TAC") (*Brennan* Dkt. 57) ¶ 1; First Amended Complaint ("*Aboubakar* FAC") (*Aboubakar* Dkt. 27) ¶ 1.) In both cases, Plaintiffs seek to certify a class representing all detainees at the facility from "April 8, 2017, to the date on which Defendants are ordered to remedy the unconstitutionally inhumane conditions in BCB, or otherwise remedy those conditions" (the "Class Period"). (*Brennan* TAC ¶ 12; *Aboubakar* FAC ¶ 12.)

For the following reasons, the motions to certify the classes in each case are DENIED without prejudice.

## I.   BACKGROUND

### A.   Factual Background[1]

BCB is a pre-arraignment holding facility for detainees arrested in Brooklyn. (*Brennan* TAC ¶ 1.) The Named Plaintiffs are former detainees at BCB who were held at BCB between 2016 and 2019, each for less than thirty-six hours. (*Id.* ¶¶ 28-36; *Aboubakar* FAC ¶¶ 28-41; Mot. at 11.)

Plaintiffs allege that while detained at BCB they experienced "inhumane conditions of confinement" in violation of their rights under the Due Process Clause of the Fourteenth Amendment. (*Brennan* TAC ¶ 1.) Specifically, Plaintiffs allege the following conditions at BCB: (1) overcrowding; (2) unsanitary toilets; (3) scattered garbage and inadequate sanitation; (4) vermin infestation; (5) a lack of toiletries and hygienic items; (6) inadequate nutrition and water; (7) extreme temperatures and poor ventilation; (8) crime and intimidation; and (9) sleep deprivation. (*Brennan* TAC ¶¶ 37-46.) These are the same general conditions that the Second Circuit held could support a due process claim against BCB in *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017). (*See Brennan* TAC ¶ 2 (citing *Darnell*, 849 F.3d at 26, 36).) Plaintiffs allege that the conditions reviewed in *Darnell* have persisted despite the Defendants being put on notice of the conditions by that

---

[1] In resolving the motion to certify the class, the court draws from the *Brennan* Third Amended Class Action Complaint and *Aboubakar* First Amended Complaint. (*See generally Brennan* TAC; *Aboubakar* FAC.) The court has also considered the declarations (and attached exhibits) submitted by the Plaintiffs. These include the declaration of Stephen Bergstein, Esq. in support of motion for class certification ("Bergstein Decl.") (Dkt. 142), and the reply declaration of Stephen Bergstein, Esq. in further support of motion for class certification ("Second Bergstein Decl.") (Dkt. 141).

case, letters, and news reports. (*Brennan* TAC ¶¶ 3, 21-27.)[2] Plaintiffs allege that because these inhumane conditions persisted, Defendants deprived the entire Proposed Class—every detainee at BCB since April 8, 2017—of their due process rights. (*Brennan* TAC ¶¶ 1, 3-4, 37.)

Defendants are the City of New York and officers and employees of the NYPD and the Department of Citywide Administrative Services (collectively "Defendants"). (*Brennan* TAC ¶ 1.) Plaintiffs allege that the officer-Defendants, acting under color of law at all relevant times, oversaw BCB and were responsible for maintaining BCB's conditions. (*Id.* ¶¶ 11, 15, 47.) Plaintiffs also allege that these individuals were aware of BCB's inhumane conditions of confinement due to personal observation, official documents, news reports, complaints, and prior lawsuits. (*Id.* ¶¶ 49-54.) Further, Plaintiffs allege that despite being on notice, Defendants did not take remedial measures to correct these conditions and otherwise failed to act, thereby "tacitly authoriz[ing]" the facility's inhumane conditions. (*Id.* ¶¶ 56, 58.)

### B. Procedural Background

Dominick Brennan, along with six others, filed the first Complaint in this case on April 9, 2019. (*Brennan* Compl. (Dkt. 1).) They filed the operative Third Amended Complaint on November 17, 2020. (*See generally Brennan* TAC.) Olakean Aboubakar, along with additional Plaintiffs, brought suit against the same Defendants on April 7, 2020 in a separate case, alleging the same

---

[2] While the allegations focus on the same general conditions of confinement at BCB, the actual facility at issue in *Darnell,* located at 275 Atlantic Avenue, Brooklyn, New York, *see Darnell,* 849 F.3d at 22, differs from the facility where members of the Proposed Class were detained, (Compl. ¶ 1). BCB had been relocated by the time of the Circuit's decision in February 2017. *Darnell,* 849 F.3d at 22. The motion papers and briefing do not make clear whether the facility at 275 Atlantic Avenue is still in use as a holding facility.

constitutional violations relating to the conditions at BCB. (*See generally Aboubakar* Compl. (*Aboubakar* Dkt. 1).) Plaintiffs in both cases (collectively "Plaintiffs") now seek certification of the same class of individuals held at BCB since April 8, 2017, alleging that as detainees of BCB they were deprived of their due process rights. (*Brennan* TAC ¶ 1, 12; *Aboubakar* FAC ¶ 1, 12.)

Plaintiffs bring multiple claims under 42 U.S.C. § 1983, including violation of due process, supervisory liability, and failure to intervene, seeking both damages and injunctive relief. (*See Brennan* TAC ¶¶ 1, 61-76; *Aboubakar* FAC ¶¶ 1, 66-81.) They also bring a due process claim under the New York State Constitution. (*See Brennan* TAC ¶¶ 1, 77-81; *Aboubakar* FAC ¶¶ 1, 82-86.) Because the issues in both cases, *Brennan* and *Aboubakar*, are "substantively identical" and the Defendants are the same, the court granted the Plaintiffs' request to consolidate the cases for discovery purposes on January 25, 2021. (*See* Jan. 25, 2021 M&O (*Brennan* Dkt. 64) at 3-4.) Briefing on Plaintiffs' motion for class certification was completed on February 9, 2023. (*See* Mot.; Opposition to Plaintiff's Motion for Class Certification ("Opp.") (*Brennan* Dkt. 139); Plaintiffs' Reply in Further Support of the Motion ("Reply") (*Brennan* Dkt. 140).)[3] Plaintiffs seek certification of both a damages class under Federal Rule of Civil Procedure ("Rule") 23(b)(3) as well as an injunctive class under Rule 23(b)(2). (Mot. at 9, 12.) In the event the court denies certification of a 23(b)(3) class, Plaintiffs alternatively seek certification of an issue class under Rule 23(c)(4) to determine liability. (*Id.* at 16.)

Because the Plaintiffs in both cases seek to certify overlapping classes, present essentially the same legal issues, filed briefing together, and rely on the same evidence of the conditions at BCB

---

[3] Because of the similarities between the allegations and claims in both cases, the court generally cites to the filings in *Brennan*.

to support their motions, the court considers the two *Brennan* and *Aboubakar* motions for class certification together.

## II. LEGAL STANDARD

Class certification is governed by Rule 23, under which all class actions must meet the following four requirements:

> (1) the class is so numerous that joinder of all members is impracticable (numerosity);
>
> (2) there are questions of law or fact common to the class (commonality);
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and
>
> (4) the representative parties will fairly and adequately protect the interests of the class (adequate representation).

Fed. R. Civ. P. 23(a). The Second Circuit has also recognized an implied fifth requirement of "ascertainability" which demands that a class be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Secs.*, 862 F.3d 250, 264 (2d Cir. 2017) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)).[4]

A class action must also satisfy the requirements of one of the provisions of Rule 23(b), which sets out prerequisites for each of three different types of class actions. *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). Rule 23(b)(2), which allows certification of a class sought by plaintiffs seeking injunctive relief, "is appropriate 'if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate

---

[4] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

respecting the class as a whole.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(2)). Rule 23(b)(3), which allows class members to recover money damages, requires showings of predominance and superiority to ensure that the class is sufficiently cohesive. *Id.* A class may alternatively be certified under Rule 23(c)(4) "[w]hen appropriate . . . to single out issues for class treatment[,]" even when the requirements of Rule 23(b)(3) are not met. *In re Nassau County Strip Search Cases*, 461 F.3d 219, 227 (2d Cir.2006).

The "party seeking class certification must affirmatively demonstrate [] compliance with the Rule [23 requirements.]" *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The district court must determine whether plaintiffs demonstrate compliance which may require resolving "factual disputes relevant to each Rule 23 requirement" and establishing "whatever underlying facts are relevant to a particular Rule 23 requirement[.]" *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). "While the plaintiff's pleadings are assumed to be true, the court must nevertheless conduct a rigorous analysis to determine whether a class action is appropriate, considering materials outside of the pleadings and weighing conflicting evidence as necessary." *Jackson v. Bloomberg, L.P.*, 298 F.R.D 152, 159 (S.D.N.Y. 2014). "[T]he preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements." *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). While this often requires a consideration of the merits of the underlying claim, *Wal-Mart*, 564 U.S. at 351, a "determination as to a Rule 23 requirement is not binding on the trier of fact in its determination of the merits." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015).

## III. DISCUSSION

Plaintiffs seek to certify a class composed of "all persons who were detained in BCB from April 8, 2017, to the date on which

Defendants are ordered to remedy the unconstitutionally inhumane conditions in BCB, or otherwise remedy those conditions" (the "Proposed Class"). (*Brennan* TAC ¶ 12; *Aboubakar* FAC ¶ 12.) This is essentially all detainees at BCB between April 8, 2017 and the present. (*Brennan* TAC ¶ 1; *Aboubakar* FAC ¶ 1.) Plaintiffs seek both monetary damages under Rule 23(b)(3) and injunctive relief under Rule 23(b)(2). (Mot. at 9, 12-14.) As an alternative to certification of a Rule 23(b)(3) class, Plaintiffs seek to certify an "issue class" to determine liability pursuant to Rule 23(c)(4). (*Id.* at 16.)

The court reviews each of the Rule 23 requirements necessary to certify the Proposed Class. It starts with the Rule 23(a) and ascertainability requirements, and then turns to the requirements for each type of class under Rule 23(b)(2), Rule 23(b)(3) and Rule 23(c)(4).

### A. Rule 23(a)

For a court to certify a class, plaintiffs must affirmatively show that the Proposed Class meets the four Rule 23(a) requirements (numerosity, typicality, commonality and adequacy of representation) as well as the implied fifth requirement ascertainability. *See* Fed. R. Civ. P. 23(a); *In re Petrobras*, 862 F.3d at 264. For the following reasons, the court finds that Plaintiffs meet each of these requirements.

#### 1. Numerosity

Numerosity requires that the Proposed Class be so large "that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this Circuit, "[n]umerosity is presumed for classes larger than forty members." *Penn. Pub. Sch. Emps.' Ret. Sys. V. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Precise calculation of the number of potential class members is

not required. *In re Vivendi Univ., S.A. Secs. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007).

The Proposed Class includes all those detained at BCB between April 8, 2017 and the present day. Plaintiffs identify 163,740 BCB detainees between 2016 and 2019, (Mot. at 4), suggesting that the Proposed Class numbers in the hundreds of thousands. Defendants do not dispute that Plaintiffs meet the numerosity requirement. (*See generally* Opp.) The court finds that the Class is sufficiently numerous.

### 2.   Commonality

Commonality requires showing that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A single common question will suffice. *Wal-Mart*, 564 U.S. at 359. However, a *single* common question does not mean *any* common question—what Rule 23(a)(2) requires is that plaintiffs' claims "depend upon a common contention [that is] of such a nature that it is capable of classwide resolution[.]" *Id.* at 350. In other words, plaintiffs must demonstrate that a common issue among class members exists, "the determination of its truth or falsity will resolve an issue that is central to the validity of each one of [plaintiffs'] claims in one stroke." *Id.*

This requirement may be met where, although individual experiences and conditions differ, class members' injuries "derive from a unitary course of conduct by a single system[.]" *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *see also Butler v Suffolk County*, 289 F.R.D. 80, 98 (E.D.N.Y. 2013) ("[W]hat matters to class certification [is] . . . the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."). Courts in this Circuit have therefore found commonality on this basis for classes alleging constitutional violations by municipal systems. In *Marisol A.*, for instance, the Second Circuit affirmed the district court's certification of a class in a case challenging aspects of New York City's child welfare

8

system where the court "identified as a common question of law 'whether each child has a legal entitlement to the services of which that child is being deprived'" and a common question of fact 'whether defendants systematically have failed to provide these legally mandated services.'" 126 F.3d at 377 (quoting *Marisol A. ex rel. Forbes v. Giuliani*, 929 F. Supp. 662, 690 (S.D.N.Y. 1996)). Although each child faced unique circumstances and the allegations implicated different "statutory, constitutional and regulatory schemes," the Circuit concluded that the district court did not err in finding that the allegations challenging the welfare system presented common legal and factual issues. *Id.* at 376-77. Similarly, in *Butler* the court granted certification where plaintiffs challenged conditions of confinement at two facilities that made up the Suffolk County Correctional Facility ("SCCF"). 289 F.R.D. at 87, 103. Although brought before *Darnell*, the plaintiffs made similar claims to those Plaintiffs now pursue—that the conditions at the SCCF were so objectively inhumane as to deprive detainees of their rights under the Eighth and Fourteenth Amendments of the Constitution. *Id.* at 87. In certifying both a damages and injunctive class, the court found that the plaintiffs met the commonality requirement because "[w]hether the County was aware of and deliberately indifferent to the conditions at the SCCF is a common question subject to classwide resolution." *Id.* at 98 (citing *Wal-Mart*, 564 U.S. at 359).[5]

In both cases, *Marisol A.* and *Butler*, the courts considered and found commonality despite the unique character of each individual plaintiffs' experiences. In such circumstances, plaintiffs may still demonstrate commonality when they allege systemic failures that deprived the proposed class of their rights.

---

[5] The court also divided the class into subclasses to consider the conditions at each of the two separate facilities independently which allowed for an additional common question as to whether each facility's conditions fell "below constitutionally acceptable standards." *Butler*, 289 F.R.D. at 98.

Here, Plaintiffs allege that Defendants violated the Due Process Clause of the Fourteenth Amendment by subjecting the class to unconstitutionally inhumane conditions in BCB. (*Brennan* TAC ¶¶ 1, 16.). Whether this claim presents a common question under Rule 23(a)(2) requires showing that (1) the court can determine that Plaintiffs suffered an objective deprivation on a classwide basis (*i.e.*, that the court could resolve whether the conditions fell below constitutional requirements for the entire class); and (2) BCB can be considered a "single system" such that Defendants were responsible for the Proposed Class's injuries. *See Marisol A.*, 126 F.3d at 377. If so, the court could resolve common questions central to the Proposed Class's claims. *Wal-Mart*, 564 U.S. at 350. If not, Plaintiffs' claims would not give rise to common answers and class certification would be inappropriate.

*a.*      Objective Deprivation on a Classwide Basis

To demonstrate an injury, Plaintiffs must meet the two *Darnell* requirements. Plaintiffs must show: (1) that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) that "the officer[s] acted with at least deliberate indifference to the challenged conditions." 849 F.3d at 29. The deliberate indifference prong can be met by assessing whether the defendant "recklessly fail[e]d to act to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or *should have known,* that the conditions posed an excessive risk to health or safety." *Id.* at 32, 35-36. Each requirement allows for an objective determination that a deprivation occurred. *Id.* Because a court may determine whether each prong is met based on objective criteria, the court could resolve whether each member of the Proposed Class faced a common injury as Plaintiffs allege, (*Brennan* TAC ¶¶ 15-16, 63-64). In other words, a court may determine whether the Proposed Class suffered an injury on a classwide basis.

Defendants argue that Plaintiffs' individual experiences do not allow for classwide resolution because courts must determine unconstitutional conditions of confinement on a case-by-case basis. (Opp. at 6 (citing *Darnell*, 849 F.3d at 30).) This, according to Defendants, requires assessing each individual Plaintiff's experiences at BCB and, if done on a classwide basis, would require the court to effectively undertake the *Darnell* analysis "hundreds of thousands of times." (*Id.*) Thus, according to Defendants, class treatment is inappropriate for conditions of confinement cases—apparently for any class, no matter its size—because a required individual assessment of harm precludes a finding of a common injury among class members.

However, Defendants misinterpret the case-by-case analysis required by *Darnell*. *Darnell* requires courts to consider "conditions of confinement *cases*" on a "case-by-case basis" without using "bright-line durational or severity limits." 849 F.3d at 31, 37-38 (emphasis added). It does not, however, require case-by-case analysis of each individual detainee. Determining whether conditions of confinement are sufficiently serious to constitute an objective deprivation in a particular case requires a fact intensive analysis wherein courts consider the conditions' aggregate impact of relevant conditions on detainees. *Id.* at 30. For instance, "[u]nsanitary conditions, especially when coupled with other mutually enforcing conditions, such as poor ventilation and lack of hygienic items (in particular, toilet paper), can rise to the level of an objective deprivation." *Id.* Thus, a court must take a close look at the facility's aggregate conditions to determine whether an injury occurred, but a court need not assess each plaintiff's individual subjective experience. *See id.* at 31 ("this Court . . . has never imposed a requirement that pretrial detainees show that they actually suffered from serious injuries."). Individual and unique conditions of confinement may, however, create separate gradations of the injury and speak to damages. *Id.* at 31-32.

In sum, differences in plaintiffs' experiences are expected in cases alleging injuries due to a defendant's systemic failures that create a deprivation of rights, but they do not preclude the finding of commonality. *See, e.g., Hill v. County of Montgomery,* No. 14-CV-993 (BKS) (DJS), 2018 WL 3979590, at *8-9 (N.D.N.Y. Aug. 20, 2018) (finding commonality in case alleging unconstitutional conditions of confinement); *Butler,* 289 F.R.D. at 98 (same); *Marisol A.,* 126 F.3d at 377 (affirming the district court's finding of commonality despite the presence of unique issues raised by plaintiffs); *Nat'l L. Ctr. on Homelessness & Poverty, R.I. v. New York,* 224 F.R.D. 314, 322-24 (E.D.N.Y. 2004) (finding commonality was met for a class of homeless children in a case challenging systemic failures in providing access to education despite the "unique situation of each child"). Thus, whether the Proposed Class faced a common injury can be considered on a classwide basis.

> ### b.   Single System for Which Defendants Are Responsible

Plaintiffs must also show that Defendants may be held responsible for the Proposed Class's alleged classwide injury. In other words, that BCB may be considered a "single system" for the purpose of resolving the Proposed Class's claims. *Marisol A.,* 126 F.3d at 377. The parties dispute this, (Mot. at 7; Opp. at 11; *see also Brennan* TAC ¶¶ 11, 47, 55), but Plaintiffs' arguments that BCB operates as a single system for which Defendants are responsible are more persuasive.

Plaintiffs offer deposition testimony by Gary Strebel and Donna Jones, former assistant chiefs within the NYPD's Criminal Justice Bureau ("CJB"), to support the contention that CJB is responsible for ensuring that conditions at BCB are safe and sanitary. (Ex. B to Second Bergstein Decl. ("Strebel Dep.") (Dkt. 141-2) at 37-38; Ex. C to Second Bergstein Decl. ("Jones Dep.") (Dkt. 141-3) at

10-11).) As detailed by Strebel and Jones, individual on-duty officers report up through a chain of command to higher-level CJB officers, who are ultimately responsible to the first deputy commissioner of the NYPD, who in turn is ultimately responsible to the Police Commissioner. (Strebel Dep. at 26-27; Jones Dep. at 11.) On-duty officers must also follow departmental guidelines to ensure "prisoners were treated properly and that the facility was maintained." (Strebel Dep. at 125-26; *see also* Jones Dep. at 21, 153, 162-64.)

Defendants concede that "some of the conditions are governed by departmental guidelines," but argue that the "ultimate decisionmaker" over the conditions at BCB is the on-duty commanding officer. (Opp. at 11.) Because of this discretion, Defendants argue that there is no single source of responsibility for the conditions at BCB, so commonality cannot be met. (*Id.* at 12.) In making this argument, Defendants rely heavily on *Wal-Mart.* (*Id.*) In *Wal-Mart*, plaintiffs sought to certify a class of 1.5 million current and former Wal-Mart employees, alleging companywide discrimination against women in pay and promotion decisions in violation of Title VII. 564 U.S. at 343. The Supreme Court reversed the lower court's certification of the class, holding that the class lacked commonality due, in large part, to the individual managers' discretion in hiring and pay decisions. *Id.* at 355-56. Because of this discretion, even if there was discrimination in certain stores or in certain regions, plaintiffs would not be able to demonstrate that there existed a companywide discriminatory pay and promotion policy such that the company would be liable for all proposed class members' alleged injuries. *Id.* at 358-59. Thus, plaintiffs did not present a common question. *Id.*

This case is readily distinguishable. The claims in *Wal-Mart* related to an amalgamation of individual decisions by local managers across thousands of stores that led to pay and hiring disparities. *Id.* at 355-56. While the pay and hiring decisions in

*Wal-Mart* were left to "local managers' broad discretion," *id.* at 343, Strebel and Jones' testimony indicates that higher-level officers are ultimately responsible for conditions at BCB and that facility-wide guidelines limit the discretion of on-duty officers, (Strebel Dep. at 26-27; Jones Dep. at 11). Defendants offer little to support the opposite conclusion—that only those on-duty are responsible for BCB's conditions and that there is not a common source of oversight. They only point to statements by Strebel and Jones that on-duty commanding officers had discretion over a single decision: how many individuals were put in cells at a given time. (Opp. at 11-12.) It would be absurd to find that giving discretion to lower-level officers over *some* decisions bars a finding of commonality. *See Wal-Mart*, 564 U.S. at 355 ("To be sure, we have recognized that, in appropriate cases, giving discretion to lower-level supervisors can be the basis of Title VII liability[.]"). Similarly, Defendants do little to dispute that guidelines limit discretion of individual officers, arguing only that the guidelines covered "some of the conditions" at issue without detailing which ones or their importance in maintaining the facility. (Opp. at 11.)

Thus, for the purpose of class certification, the court finds that BCB operated as a single system susceptible to common assignment of responsibility for the alleged injuries suffered by the Proposed Class.

### c.     Conclusion

Because the Proposed Class's injuries may be determined objectively as a class and BCB may be considered a single system for the purposes of assigning liability for these injuries, the court is able to define a number of common questions. Specifically: (1) whether the conditions at BCB were of such a condition that the Class was deprived of their due process rights; (2) whether Defendants were aware or should have been aware of such conditions; and (3) whether the City had or has a policy, practice

14

or custom that allows these facilities to remain in an unconstitutional condition. Each of these questions is capable of classwide resolution such that a determination of their "truth or falsity will resolve an issue that is central to the validity" of Plaintiffs' claims. *Wal-Mart*, 564 U.S. at 350.

Thus, Plaintiffs meet the commonality requirement under Rule 23(a)(2).

### 3. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). When the "same unlawful conduct was directed at or affected both the named plaintiffs and the prospective class, typicality is usually met." *Stinson v. City of New York*, 282 F.R.D. 360, 371 (S.D.N.Y. 2012) (citing *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)). The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites. *Wal-Mart*, 564 U.S. at 349 n.5; *Marisol A.*, 126 F.3d at 376.

Here, this element is met for many of the same reasons that commonality is met. The Named Plaintiffs were detained at BCB for the relevant time period and suffered injuries that they allege resulted from the Defendants' deliberate indifference to the facility's conditions. (*See* Bergstein Decl. ¶ 2 (summarizing deposition testimony from the Named Plaintiffs).) While the Named Plaintiffs were detained in BCB at different times than other Proposed Class members and experienced differences in their conditions, the core of the claims—that Defendants maintained unconstitutional conditions at BCB over the Class Period—remain the same. *See Scott v. Quay*, 338 F.R.D. 178, 188 (E.D.N.Y. 2021) ("'Minor variations in the fact patterns underlying the individual claims' will not defeat typicality where 'plaintiffs allege that their injuries derive from a unitary course of conduct by a

single system.'") (quoting *Robidoux*, 987 F.2d at 936–37 and *Marisol A.*, 126 F.3d at 377); *Stinson*, 282 F.R.D. at 371.

Defendants consider commonality and typicality together and provide similar arguments for why the court should find that neither requirement is met. (*See* Opp. at 4.) Specifically, Defendants argue that the conditions must be considered on a case-by-case basis, and that facility conditions are determined by the on-duty commanding officer's discretion. (*Id.*) The court reviewed each of these arguments when considering commonality and rejects them in the typicality context for similar reasons; Plaintiffs have demonstrated a unitary system of responsibility over conditions at BCB and their allegations and experiences at the facility are typical of the Class.

Thus, the court finds that the typicality requirement is met here.

### 4.   Adequacy of Representation

Rule 23(a)(4) requires that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

The "proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Certification may be denied "where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072,

1077-78 (2d Cir. 1995). However, "named plaintiffs are not expected to possess expert knowledge of the details of the case and must be expected to rely on expert counsel." *Baffa*, 222 F.3d at 61.

Here, Named Plaintiffs are adequate representatives of the Proposed Class. Their experiences detained at BCB over the Class Period reflect an understanding of the facility's conditions, (*Brennan* TAC ¶¶ 28-36.); they have shown an interest in the litigation by providing depositions relating to their experiences at BCB, (*see* Bergstein Decl. ¶ 2 (summarizing deposition testimony from the Named Plaintiffs)); and their interests are aligned with the rest of the Proposed Class given the common interest in showing that conditions at BCB were unconstitutional and that Defendants are responsible, (*id.*) Defendants do not dispute that the Named Plaintiffs would adequately represent the Class. Thus, the Named Plaintiffs do not present the rare case where certification would be denied based on inadequate qualifications of plaintiffs. *See Butler*, 289 F.R.D. at 100.

Plaintiffs' counsel has been involved since the onset of this litigation and engaged in discovery on their behalf prior to the certification motion. Plaintiffs' counsel is also experienced representing class action plaintiffs in civil rights litigation. (*See generally* Exs. 23-25, 27 to Bergstein Decl. (*Brennan* Dkts. 142-23, 142-24, 142-24, 142-27).) Defendants do not dispute that Plaintiffs' counsel would adequately represent the Class.

Therefore, Plaintiffs have satisfied the adequacy requirement.

### 5. Ascertainability

In addition to the factors stated explicitly in Rule 23(a), the Second Circuit has also developed an implied ascertainability requirement that plaintiffs must meet prior to certifying a class. *In re Petrobras*, 862 F.3d at 264. Ascertainability "requires only that a class be defined using objective criteria that establish a

membership with definite boundaries." *Id.* However, it is "modest" and does not require a "showing of administrative feasibility at the class certification stage." *Id.* at 265, 269.

Here, the Proposed Class can be defined based on objective criteria: detention at BCB during the relevant Class Period. Defendants presumably have access to this information, making it administratively feasible to determine whether a particular individual is a member of the Proposed Class. *Brecher,* 806 F.3d at 24. Therefore, the Proposed Class is ascertainable.

### 6. Summary

Plaintiffs meet the four requirements—numerosity, commonality, typicality, and adequacy of representation—under Rule 23(a), as well as the implied fifth requirement of ascertainability. To certify a class, however, Plaintiffs must also meet one of the requirements under Rule 23(b) or be an appropriate vehicle to resolve particular issues under Rule 23(c)(4). The court next turns to these issues.

### B. Rule 23(b)(2)

For injunctive relief to be appropriate under Rule 23(b)(2), Plaintiffs must show that an injunction would be an indivisible remedy and that at least one Named Plaintiff has standing to seek the relief requested.

### 1. Indivisibility Under Rule 23(b)(2)

If a class seeks injunctive relief, the requested relief must "apply generally to the class" so that this relief "is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This does not require "that that the relief to each member of the class be identical, only that it be beneficial." *Barrows v. Becerra,* 24 F.4th 116, 132, (2d Cir. 2022). "[D]ifferent class members can benefit differently from an injunction." *Id.* However, the injunction must still benefit

each member of the class. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020) (citing *Wal-Mart*, 564 U.S. at 360).

Here, Plaintiffs do not demonstrate that the injunctive relief requested would apply generally to the Proposed Class such that each member would benefit. The Proposed Class includes all those previously detained at BCB since April 2017, such as individuals who have been incarcerated multiple times and may be likely to be re-incarcerated at BCB again. (Mot. at 16.) Such individuals could reasonably benefit from improved conditions at BCB. *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97-98 (2d Cir. 2015) (finding that this requirement was met for a class that include plaintiffs who might still be subject to further action by defendants who fraudulently procured default judgments even when their judgments had been vacated). However, the Proposed Class (over 150,000 former detainees) also undoubtedly includes individuals who face little to no risk of future detention—for instance individuals who no longer live in the state with no plans to return. Plaintiffs do not demonstrate that these individuals would benefit from the injunctive relief sought and therefore do not meet the requirements under Rule 23(b)(2). *See* Fed. R. Civ. P. 23(b)(2) (Rule 23(b)(2) certification is appropriate when the relevant actions that plaintiffs seek to enjoin "apply generally" to the class).

In arguing for certification under Rule 23(b)(2), Plaintiffs liken their case to other civil rights class actions that this provision is meant to address. (Mot. at 13-14.) However, unlike the Proposed Class here, the classes in Plaintiffs' cited cases were crafted to include individuals that would generally benefit from the forward-looking injunctive relief sought. In *Marisol A.*, for instance, the class was comprised of "all children who *are or will be* in the custody of the New York City Administration for Children's Services, and those children who . . . *are or will be* at risk of neglect or abuse and whose status is or should be known to ACS." 126

F.3d at 375 (emphasis added). Other cases cited by Plaintiffs similarly focus on those experiencing current or future harm that the sought-after injunction would enjoin. *See, e.g., Nicholson v. Williams,* 205 F.R.D. 92, 95, 102 (E.D.N.Y. 2001) (certifying various injunctive subclasses of children and custodians of children who suffered continued harm from child welfare policies); *Braggs v. Dunn,* 317 F.R.D. 634, 673 (M.D. Ala. 2016) (certifying a class of "all persons with a serious mental-health disorder or illness *who are now, or will in the future be,* subject to defendants mental-health care policies and practices in ADOC facilities," with some exclusions) (emphasis added); *Baby Neal ex rel Kanter v. Casey,* 43 F.3d 48, 60 (3d Cir. 1994) (reversing the district court's denial of class certification for a class of children who "are subject to the risk that they *will suffer* from the same deprivations resulting from the DHS' alleged violations") (emphasis added); *Butler,* 289 F.R.D. at 103 (certifying a class of detainees who "*now or at any time in the future,* are or will be detainees or prisoners in the custody of the Suffolk County Sheriff's Department") (emphasis added); *see also Nat'l L. Ctr. on Homelessness & Poverty,* R.I. 224 F.R.D. at 322-23 (certifying a class of children who "*are living or will live*" in the relevant county and "have been, are, or will be 'homeless' as defined in the McKinney-Vento Act") (emphasis added). Plaintiffs here seek to certify a class composed of those previously detained at BCB. Plaintiffs make no attempt to craft a class that would benefit from forward-looking injunctive relief or account for the different requirements for a class seeking damages as opposed to injunctive relief for its Proposed Class. *Cf. Butler,* 289 F.R.D. at 103 (approving separate subclasses for current and future detainees seeking injunctive relief and present and past detainees seeking monetary relief).

In sum, Plaintiffs do not demonstrate that an injunction addressing future conditions at BCB would provide an indivisible benefit to a class comprised almost entirely of prior detainees. Therefore,

Plaintiffs do not meet Rule 23(b)(2)'s requirement that the requested relief applies generally to the Proposed Class.

### 2.   Standing

Even if injunctive relief applied generally to the Proposed Class, it is unclear whether Plaintiffs could demonstrate standing to seek injunctive relief, which could also prevent certification under Rule 23(b)(2).

The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). They must show that they have suffered an injury in fact—a concrete and imminent harm to a legally protected interest that is fairly traceable to the challenged conduct and likely to be redressed by the lawsuit. *Id.* at 560-61. "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. F. for Acad. and Inst. Rts., Inc.*, 547 U.S. 47, 53 n.2 (2006); *see also Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *see also Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011) ("[A] class action cannot be sustained without a named plaintiff who has standing.").

Even if practices that caused injury are widespread and persist, a plaintiff does not have standing to enjoin such conduct if they cannot demonstrate "any real or immediate threat that they will be wronged again—a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Demonstrating standing is often difficult for plaintiffs seeking to enjoin allegedly unconstitutional conduct by law enforcement because of the need to show a sufficient "likelihood of a future encounter with the [] police" leading to injury. *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004); *Lyons*, 461 U.S. at 111.

In *O'Shea*, for instance, plaintiffs sought to enjoin a county's "unconstitutional and selectively discriminatory enforcement and administration of criminal justice[.]" 414 U.S. at 491. However, because the *O'Shea* named plaintiffs could not show a real or imminent threat that they would be harmed by the challenged practices, they did not have standing to bring the claim. *Id.* at 497-99.

Plaintiffs here face a similar problem because "[p]retrial detention is by nature temporary[.]" *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). None of the Named Plaintiffs were detained at BCB at the time they brought this suit, (*Brennan* TAC ¶ 28), so Plaintiffs cannot demonstrate standing to enjoin a current ongoing injury due to the unconstitutional conditions at BCB. Recognizing this, Plaintiffs instead argue that they face a substantial threat of future deprivations because at least some of the Named Plaintiffs are likely to be detained there again and support this likelihood by noting that multiple Named Plaintiffs were arrested and detained at BCB on several different occasions. (Mot. at 16.) One Named Plaintiff, Dwight France, has been detained at BCB seven times between November 2017 and December 2019, (Bergstein Decl. at 7)—each detention apparently a result of driving with a suspended license, (Ex. 12 to Bergstein Decl. (*Brennan* Dkt. 142-12) at 25-26).

Past confinement does not itself demonstrate standing, but it may provide useful "evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea*, 414 U.S. at 496. The court agrees that Plaintiffs' multiple arrests indicates that Named Plaintiffs such as France face a greater likelihood of future injury than the plaintiffs in *Lyons, O'Shea,* and other follow-on cases relating to allegedly unconstitutional but transitory practices by police officers. In *Lyons*, the Court found that the plaintiff did not have standing because the police did not have a general policy of inflicting chokeholds on Los Angeles citizens,

and it was too speculative that the police would both (1) stop Lyons again and (2) use an illegal chokehold on him. *Lyons*, 461 U.S. at 104, 108. In *O'Shea*, the court found plaintiffs did not have standing in part because plaintiffs provided only "general assertions or inferences" that they would be subject to future arrest and assumed Plaintiffs would not break the law again in the future. *O'Shea*, 414 U.S. at 497-98. And in *Shain*, the court determined that the plaintiff did not have standing because he had not been re-arrested in the year since the action was brought, did not have any further encounters with police and that even if he were to be re-arrested, it was "entirely conjectural that [the plaintiff] would be detained overnight and remanded to the NCCC" *and* that a strip search would occur without "particularized reasonable suspicion that he is concealing contraband." 356 F.3d at 213, 215-16. Here, by contrast, France was arrested seven times (indicating a likelihood of re-arrest) and there is a more immediate path for Named Plaintiffs to suffer a future injury—arrest and detention in BCB (since Plaintiffs allege that these unconstitutional conditions persist and subject every detainee to an objective deprivation). Thus, the present matter does not involve the same level of conjecture or series of inferences that precluded standing in these cases.

On the other hand, if the deprivation is the result of a Named Plaintiff's continued illegal activity, standing may be improper because the court should assume that a plaintiff will follow the law. *See O'Shea*, 414 U.S. at 497 ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners."); *see also Lyons*, 461 U.S. at 103. Plaintiffs cite *Floyd v. City of New York*, 283 F.R.D. 153 (S.D.N.Y. 2012) to support their argument that the likelihood of recurring encounters with police could establish standing, but this case is meaningfully distinguishable from

*Floyd*. (Mot. at 16.) In *Floyd*, the court found standing for plaintiffs representing a class challenging the NYPD's stop-and-frisk policy because the named plaintiffs' record of being stopped multiple times demonstrated a non-speculative likelihood of future harm. *Id.* at 159, 169. However, the court also noted that, unlike in *Lyons* and *Shain*, the injury at issue did not depend on future arrest for unlawful conduct because plaintiffs were often stopped without reasonable suspicion of criminal activity. *Id.* at 167, 169-70. The scale of the practice (with the NYPD conducting over 1,200 stops each day) also made it more likely named plaintiffs would be subject to a future deprivation due to the challenged policy. *Id.* at 170.

Here, Named Plaintiffs do not establish that they can avoid re-arrest by refraining from engaging in future illegal activities and do not allege that the NYPD arrested the Named Plaintiffs without probable cause. Plaintiffs reference the idea that Plaintiffs may be arrested without committing a future infraction by noting the dismissal of some charges against Plaintiffs. (Mot. at 16.) However, simply pointing out that some charges were dismissed is insufficient to show Plaintiffs were arrested and placed in BCB without committing any infraction and face a significant likelihood of this recurring in the future. For instance, Named Plaintiff Dwight France was arrested and placed in BCB seven times due to a suspended license, (Ex. 12 to Bergstein Decl. at 25-26), but Plaintiffs do not discuss whether France can avoid re-arrest by simply not driving with a suspended license. Absent discussion of whether they can avoid re-arrest, or alternatively, why committing further infractions does not matter for the purposes of standing, Plaintiffs are likely unable to demonstrate standing to certify a class to pursue injunctive relief.

To summarize, despite multiple prior arrests, demonstrating standing is challenging for Plaintiffs without a greater discussion of the likelihood of re-arrest and how this likelihood may be due

to Named Plaintiffs' continuing to engage in illegal activity. How-
ever, because Plaintiffs do not meet the indivisibility requirement
under Rule 23(b)(2), the court need not rule that Named Plain-
tiffs lack standing.

### C.      Rule 23(b)(3)

To certify a class under Rule 23(b)(3) Plaintiffs must show that
(1) "questions of law or fact common to class members predom-
inate over any questions affecting only individual members"; and
(2) "a class action is superior to other available methods for fairly
and efficiently adjudicating the controversy." *In re Petrobras*, 862
F.3d at 260 (citing Fed. R. Civ. P. 23(b)(3)). The court reviews
each of these requirements in turn.

#### 1.   Predominance

Rule 23(b)(3)'s predominance requirement "also speaks in terms
of commonality, [but] it imposes a 'far more demanding' in-
quiry'" than Rule 23(a)(2). *Sykes*, 780 F.3d at 87 (quoting
*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).
While Rule 23(a)(2) requires only a single common fact or ques-
tion, Rule 23(b)(3) considers all factual or legal issues to
determine whether issues "that are subject to generalized proof,
and thus applicable to the class as a whole predominate over
those issues that are subject only to individualized proof." *Cordes
& Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91,
107–08 (2d Cir. 2007).

The purpose of the predominance requirement is to "ensure[]
that the class will be certified only when it would 'achieve econ-
omies of time, effort, and expense, and promote uniformity of
decision as to persons similarly situated, without sacrificing pro-
cedural fairness or bringing about other undesirable results.'" *Id.*
at 104 (quoting *Amchem*, 521 U.S. at 615). While common issues
must predominate, this requirement still allows for some individ-
ualized issues among members of the class. *Sykes*, 780 F.3d at

25

81. Included among the relevant individual or common issues evaluated under Rule 23(b)(3) is the potential need to calculate class members' damages on an idnividuazlied basis. *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408 (2d Cir. 2015) ("the fact that damages may have to be ascertained on an individual basis is ... a factor that we must consider in deciding whether issues suscep-tible to generalized proof 'outweigh' individual issues."). However, the need to measure individualized damages does not alone defeat predominance. *Id.* at 407. As with the Rule 23(a)(2) commonality requirement, the court's predominance analysis of-ten requires a consideration of plaintiffs' underlying claims. *Nextel Commc'ns Inc.*, 780 F.3d at 138.

Here, the Proposed Class is composed of individuals de-tained at BCB between April 2017 and the present, during which time the conditions of confinement were purportedly so inhu-mane that each detainee was deprived of their due process rights. (*Brennan* TAC ¶ 1.) As reviewed when discussing commonality, the Proposed Class's injuries could be determined objectively and BCB may be seen as a single unitary system; therefore, common questions for the court are whether the Proposed Class suffered from an objective deprivation and whether Defendants' alleged deliberate indifference to BCB's conditions make them liable for the Proposed Class's resulting injuries.

However, the Proposed Class has too many individualized issues for Plaintiffs to satisfy Rule 23(b)(3)'s predominance re-quirement. Plaintiffs allege the following conditions at BCB that when considered in the aggregate deprived Proposed Class mem-bers of their right to due process: (1) overcrowding; (2) unsanitary toilets; (3) scattered garbage and inadequate sanita-tion; (4) vermin; (5) a lack of toiletries and hygienic items; (6) inadequate nutrition and water; (7) extreme temperatures and poor ventilation; (8) crime and intimidation; and (9) that detain-ees cannot sleep in the cells. (*Brennan* TAC ¶¶ 37-46.) These

alleged conditions will impact Proposed Class members differently such that the "gradation[s] between the conditions of confinement" for each class member will result in the need to separately calculate damages for each Proposed Class member. *See Darnell*, 849 F.3d at 37-38. For a class of this size, covering this length of time, the many individual considerations of class members' conditions outweigh the Proposed Class's common issues.

If Plaintiffs succeeded in proving liability, the degree of injury (and therefore damages) for each Proposed Class member will depend on many factors including: length of detention; the recency of the facility's cleaning and maintenance; how crowded the cells were; whether the Proposed Class member was detained with inmates that posed a risk to health or safety; the condition of the toilets at the facility; and where in the facility they were detained. Proposed Class members' degree of injury will also depend on external factors such as: whether the member was detained at the height of COVID-19; whether they were detained in the winter or summer; and whether they were detained when the facility as a whole was relatively crowded. In addition, Proposed Class members' injury may depend on idiosyncratic characteristics of each Proposed Class member. For instance, Latoya Holmes-McFadden, testified that she was in the fourth month of a high-risk pregnancy when she was detained at BCB and denied medical treatment while at the same time subject to BCB's "inhumane" conditions. (Ex. 14 to Bergstein Decl. (*Brennan* Dkt. 142-14) at 36.) Other Named Plaintiffs testified that they were unable to obtain medication for blood pressure or heart disease. (*E.g.* Ex. 1 to Bergstein Decl. (*Brennan* Dkt. 142-1) at 44-45.) These unique circumstances could impact the degree of injury and damages owed to each Proposed Class member given the fact-specific inquiry courts take when considering both deprivation and damages in conditions of confinement cases. *Darnell*, 849 F.3d at 37-38. To be sure, many detainees point to

similar conditions in the facility. (*See, e.g.,* Bergstein Decl. at 35 ("[N]early every Plaintiff saw cockroaches in the holding cells, sometimes crawling on the walls and ceilings.").) But given the size of the Proposed Class, these similar conditions do not outweigh the many unique conditions that the over 150,000 Proposed Class members faced at BCB.[6]

Plaintiffs acknowledge the individualized damages issues present in this case but argue that predominance is still met either because the individual damages issues are minor or because the common issues are so significant that they outweigh individual issues. Plaintiffs argue that the need for individual damages calculations should not defeat predominance because there are ways for the court to manage individualized damages calculations as they arise such as: "trial bifurcation, assignment to a magistrate judge or special master for damages calculations, or decertification and notice after a liability determination." (Mot. at 10 (quoting *Scott,* 338 F.R.D. at 190).) However, while such tools may exist, they do not remove the need to consider damages issues when determining predominance. *Roach,* 778 F.3d at 408. In addition, given the nature of the claims, the injuries here are unlikely to be amenable to formulaic consideration of damages which some courts have found also weighs against finding predominance. *See* Newberg on Class Actions § 4:54 (citing

---

[6] The court is aware of ongoing litigation in *Capobianco v. City of New York,* 21-CV-6125 (LDH) (VMS) (E.D.N.Y.), in which plaintiffs proposed a class defined as "[a]ll pre-arraignment detainees in City of New York's Central Booking facilities from February 3, 2020 to the present." See *Capobianco v. City of New York,* 21-CV-6125 (LDH) (VMS), Dkt. 101 at 4 (E.D.N.Y.). The court takes no position on whether the narrower time period proposed in *Capobianco* and the focus on the impact to detainees from the COVID-19 pandemic, *see id.,* could address some of the deficiencies discussed in this Memorandum and Order such that class certification in that case would be appropriate.

*McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008)).

Plaintiffs also argue that predominance is met because the Proposed Class members' injuries derive "from a unitary course of conduct by a single system." (Reply at 7.) However, Plaintiffs do not cite any authority to support this contention—that allegations against a "single system" alone—sufficiently demonstrates predominance. Rather, as is the case generally, "the balance must tip such that [] individual issues predominate." *Sykes*, 780 F.3d at 87.

Lastly, Plaintiffs analogize this case to *Scott v. Quay* where the court certified a class under Rule 23(b)(3), (Mot. at 9-10 (citing 338 F.R.D. at 189-190)), but the size of the class and the length of the class period make *Scott* meaningfully different from this case. In *Scott*, the plaintiffs brought claims under the Federal Tort Claims Act ("FTCA"), alleging negligence relating to a power outage at the Metropolitan Detention Center that led to inhumane conditions that posed a substantial risk to plaintiffs' health and safety. 338 F.R.D. at 182-83. The plaintiffs sought certification of a class "consisting of all those people who were confined in the Metropolitan Detention Center's West Building from January 27, 2019 until February 3, 2019, and who have or will in the future have satisfied the exhaustion requirement imposed by the FTCA." *Id.* at 186. Thus, the class thus covered a week-long period and included approximately 1,694 members. *Id.* at 187. There were significant individualized issues among the inmates, *see, e.g., id.* at 185 (reviewing one inmate's inability to receive kidney medication), which, as noted, do not alone defeat class certification. However, the class experienced the same general conditions with the court noting that the "claims all involve allegations of negligence against the same actors, arising from the same conduct, affecting claimants who were all housed in the same building at the same time in the same or similar ways." *Id.* at 190. After

weighing both individual and common issues, the district court found that some plaintiffs' "unique injuries" did not predominate "over the common duty, breach, and injury questions" central to the *Scott* plaintiffs' negligence claim. *Id.*

Here, "questions affecting only individual members," Fed. R. Civ. P. 23(b)(3), are far more significant than in *Scott* such that they outweigh the common issues. Common issues here include: (1) whether the conditions at BCB were of such a condition that the Class was deprived of their due process rights; (2) whether Defendants were aware or should have been aware of such conditions; and (3) whether the City had or has a policy, practice or custom that allows these facilities to remain in an unconstitutional condition. These issues are central to Plaintiffs' claims and are significant. *Cf. Scott v. Quay*, 338 F.R.D. 178, 190 (E.D.N.Y. 2021) (describing the central issues in that case relating to determinations of liability and considering the degree of harm). However, unlike in *Scott*, these common questions do not predominate over questions specific to individual members of the Proposed Class. The Proposed Class here includes over 150,000 individuals detained at BCB over a six-year period. (Mot. at 2). While Plaintiffs experienced conditions that share similarities, the degree of harm each detainee faced will depend on the facility as it existed at the time of detention which will create individual questions when determining damages, *see Darnell*, 849 F.3d at 37-38.

The court finds the size of the class and length of the Class Period relevant in this analysis because individualized concerns would be reduced if Plaintiffs proposed a smaller class detained at BCB over a narrower time period. Such a reduction in individualized issues would makes it more likely that the common issues central to this claim could predominate Proposed Class members' individual issues. However, under Plaintiffs' proposed definition before the court, it is improper to certify a damages class. In sum,

Plaintiffs have not demonstrated that the Proposed Class meets the predominance requirement under Rule 23(b)(3).

### 2. Superiority

Whether Plaintiffs meet the superiority requirement under Rule 23(b)(3) is a more difficult question; because Plaintiffs do not meet the predominance requirement, the court need not address it. The court notes, however, that while there are some efficiency benefits to proceeding as a class, Plaintiffs face a number of challenges in demonstrating that a class action is "the most 'fair and efficient' method of resolving this case." *Strip Search Cases*, 461 F.3d at 230 (quoting Fed. R. Civ. P. 23(b)(3)).

In evaluating superiority, the court considers whether the claims at issue are susceptible to generalized proof such that a class action will achieve "significant economies of time, effort, and expense and promote uniformity of decision." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013) (citing Fed.R.Civ.P. 23 advisory committee's notes). Additional relevant matters include:

> (A) the class members' interests in individually control-ling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the con-troversy already begun by or against class members; (C) the desirability or undesirability of concentrating the liti-gation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)).

Here, whether proceeding as a class action under Plaintiffs' pro-posed definition is more efficient than proceeding in individualized actions is unclear. There are some likely efficiency benefits: there has already been discovery into BCB's conditions relevant to the Proposed Class's claims and proceeding through

a class could prevent duplicative and potentially inconsistent litigation concerning Defendants' liability. However, the need to evaluate individualized damages reduces much of these efficiency gains. After a finding of liability to the Proposed Class, the court would still need to calculate individual class members' damages based on the conditions that existed at BCB during more narrow time periods when class members were injured. Because these individualized proceedings may resemble individual actions that determine both liability and injury, efficiency gains from proceeding on a classwide basis would likely be significantly reduced.

Whether class members have an "interest[] in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A), is also mixed. Proposed Class members may benefit from the class action because the cost of individual actions may be outweighed by the expected recovery. *See U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130 (citing *Amchem Prods., Inc.*, 521 U.S. at 617). However, proceeding with such a long Class Period may disadvantage many Proposed Class members. To successfully proceed on claims for the Proposed Class, Plaintiffs would need to show that conditions at BCB were so serious as to deprive all detainees at BCB of their rights for over six years. This showing is almost certainly more difficult than what would be required for many individual Proposed Class members who may have faced relatively harsher conditions during their individual periods of detention at BCB.[7] Aggregating such class

---

[7] Given the need to consider the range of conditions in this case that in the aggregate lead to an objective deprivation as well as the need to determine individualized damages based on these conditions, this case differs in meaningful respects from *In re Nassau County Strip Search Cases*, No. 99-CV-2844 (DRH), 2008 WL 850268 (E.D.N.Y. Mar. 27, 2008), cited by Plaintiffs, (Reply at 6). The damages sought by plaintiffs there centered on the "injury to human dignity" caused by the specific act at issue—the strip search—which the court found created a "strong commonality" between

members claims may therefore disadvantage them relative to proceeding based on individual actions or actions with narrower time frames.[8]

Lastly, the Proposed Class's large size and timeframe create issues of manageability, often the most important consideration when determining superiority. *Sykes*, 780 F.3d at 82. The need to manage discovery into the facility's conditions for the entire Class Period and to then determine individualized issues subsequent to the finding of liability would create challenges for many of the same reasons individual issues predominate over issues common to the class. *See* 2 Newberg and Rubenstein on Class Actions § 4:72 (6th ed.) ("[T]he manageability concern often simply echoes the predominance analysis."). Specifically, the court would still need to consider the severity of the conditions at BCB in more narrow time periods after a finding of liability.

In sum, while not necessary to decide superiority because predominance is also not met, it is unlikely Plaintiffs would be able to demonstrate that the proposed class action is superior to other forms of adjudication.

### D.  Rule 23(c)(4)

Lastly, Plaintiffs also seek to certify an issue class under Rule 23(c)(4) for liability purposes as an alternative to certifying a

---

the violation and the harm. *Id.* at *3, 6. The need in this case to consider varied conditions at the facility to find a deprivation and the injury's less clear relationship to damages make the claims here unlike those in the *Strip Search Cases*.

[8] The court acknowledges that members of the Proposed Class would have the opportunity to opt out under Rule 23(c)(2)(B) which may mitigate this concern. However, the court still considers the large class and differences in experience as relevant to a determination of superiority given the potential that individual claims or a different proposed class definition could better represent many palintiffs' individual conditions while detained at BCB.

damages class under Rule 23(b)(3), arguing that doing so would "advance the litigation in a meaningful way." (Mot. at 16-17.)

Under Rule 23(c)(4), a court may "[w]hen appropriate" certify a "class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). This allows a district court, in its discretion, to certify a class "when the action as a whole does not satisfy Rule 23(b)(3)." *Strip Search Cases*, 461 F.3d at 227. For instance, the court may certify an issue class to "separate the issue of liability from damages" when the Rule 23(b)(3) predominance requirement is not met. *Id.* at 226-27. The "Second Circuit has consistently endorsed a broad reading of Rule 23(c)(4)." *United States v. City of New York*, 276 F.R.D. 22, 33 (E.D.N.Y. 2011). The Third Circuit has noted a number of factors that a district court may consider when determining whether an issue class is appropriate, such as: the "type of claims and issues in question"; the "overall complexity of the case"; and "efficiencies to be gained by granting partial certification in light of realistic procedural alternatives[.]" *Russell v. Educ. Com'n for Foreign Med. Graduates*, 15 F.4th 259, 268 (3d Cir. 2021).

The court finds that Rule 23(c)(4) certification is inappropriate. Plaintiffs have not demonstrated that there are efficiency benefits to litigating issues of liability, only to have damages calculations occur in separate proceedings where the factual issues would significantly overlap with the determination of liability. An issue class to determine liability would consider the overall conditions at BCB for the Class Period to determine whether they fell below constitutional standards. The damages proceedings would follow this litigation and involve similar issues and facts, but for individual detainees or smaller groups of detainees. *Darnell*, 849 F.3d at 37-38. Plaintiffs do not address the efficiency benefits of separating these issues compared to alternative forms of litigation, apart from noting that determining liability as a class "will only leave the remaining question of how much each individual is owed."

34

(Mot. at 17.) While true, Plaintiffs do not address that determining how much each individual is owed will still be complex and require an evaluation of more particularized conditions in which the Class was detained, removing much of the issue class litigation's efficiency benefits. Further, because the legal standard for determining liability for claims such as Plaintiffs' is established in this Circuit, *see Darnell*, 849 F.3d at 29, proceeding as an issue class would not have a separate benefit of resolving an unsettled legal issue for the entire Class.

Thus, the court finds that it would be inappropriate to proceed as an issue class and declines to separate the issue of liability for class treatment under Rule 23(c)(4).

### E.   Summary

Having found that Plaintiffs are unable to meet the requirements under Rule 23(b)(2), Rule 23(b)(3) or Rule 23(c)(4), the Plaintiffs' motion for class certification is denied without prejudice. In the interests of justice, Plaintiffs may amend their class certification motion to address the problems discussed in this Memorandum and Order. *See* Fed.R.Civ.P. 15(a) ("[L]eave to amend shall be freely given when justice so requires."); *see also In re Beacon Assocs. Litig.*, No. 09-CV-777 (LBS) (AJP), 2012 WL 1372145, at *3 (S.D.N.Y. Mar. 19, 2012) (denying a class certification without prejudice and allowing the plaintiffs to correct deficiencies in the motion for class certification); *Hill v. County of Montgomery*, No. 914CV933BKSDJS, 2017 WL 9249663, at *9 (N.D.N.Y. Sept. 29, 2017) (same). Any new motion for certification should include an amended class definition as well as further briefing addressing the impact of any redefinition on the analysis of the Rule 23(b) and Rule 23(c)(4) requirements.

Before proceeding under a new class definition, Plaintiffs and their counsel should carefully consider how to craft a class appropriate for the claims they raise. As discussed herein, a proposed class that is too large, covers too long a time period,

and has too many individualized issues among class members is unmanageable and inappropriate for certification. Proceeding with such a class would create serious doubts that Plaintiffs could reasonably litigate their case—*i.e.*, prove that the inhumane conditions at BCB persisted for over six years such that they deprived all class members (hundreds of thousands of detainees) of their due process rights. While the court recognizes the severity of the claims raised by Plaintiffs, as the Second Circuit did in *Darnell*, this alone does not make class certification appropriate. The class definition must also allow for manageable resolution of the claims. Ignoring certification requirements only disadvantages the class members that Plaintiffs and their counsel seek to represent.

## IV. CONCLUSION

Plaintiffs' motions to certify the classes in each case are DENIED without prejudice. Plaintiffs are DIRECTED to inform the court within 60 days whether they will proceed on individual claims or whether they intend to amend their motion as discussed herein.

SO ORDERED.

Dated:    Brooklyn, New York
          September ⏐, 2023

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge